# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

STEPHEN W. CARLSON,

            Plaintiff,


v.                                    **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 12-2780 (MJD/TNL)


MARK RITCHIE, Minnesota
Secretary of State in his official capacity,
and BERT BLACK, Minnesota Secretary
of State legal adviser in his official capacity,

            Defendants.

Stephen W. Carlson, pro se.

Nathan J. Hartshorn and Oliver J. Larson, Minnesota Attorney General's Office,
Counsel for Defendants.

## I.      INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss

Plaintiff's First Amended Complaint [Docket No. 18], Defendants' Motion to

Strike Plaintiff's Responsive Memorandum as Untimely [Docket No. 30], and

Plaintiff's Motion for Continuance [Docket No. 34]. The Court heard oral

argument on March 15, 2013.

## II.     BACKGROUND

### A.      Factual Background

### 1.      The Parties and the SVRS

Plaintiff Stephen W. Carlson was the Independence Party candidate for the

U.S. House of Representatives for Minnesota's Fourth Congressional District in

November 2012.  (Am. Compl. ¶ 1.)  He finished in third place in that election.

(2012 State of Minnesota General Election Canvassing Report at 20.)

Congresswoman Betty McCollum won that election.  (Id.)

Defendant Mark Ritchie is the Minnesota Secretary of State.  Defendant

Bert Black is an in-house legal adviser for the Office of Secretary of State.  (Am.

Compl. ¶¶ 3-4.)

On October 17, 2012, before the 2012 general election, Carlson purchased a

compilation of data about his potential constituents in the Fourth Congressional

District, culled from the Statewide Voter Registration System ("SVRS").  (Am.

Compl. ¶¶ 4-5.)  The SVRS complies with the federal Help America Vote Act

("HAVA"), which requires that every state that has a voter-registration system

maintain a single computerized list "that contains the name and registration

information of every legally registered voter in the State and assigns a unique

identifier to each legally registered voter in the State."  42 U.S.C. § 15483(a)(1)(A).

The SVRS is a statewide centralized voter registration computer database that is

2

used by Minnesota's counties and the Office of Secretary of State.  Minn. Stat. §§ 201.021, 201.022.

Minnesota voter registration applications allow but do not require that registrants provide an email address.  Minn. Stat. § 201.071, subd. 1 ("The registration application may include the voter's email address, if provided by the voter, and the voter's interest in serving as an election judge, if indicated by the voter.").

Under Minnesota Statute § 201.091, subdivision 4,

[t]he county auditor shall make available for inspection a public information list which must contain the name, address, year of birth, and voting history of each registered voter in the county.  The telephone number must be included on the list if provided by the voter.  The public information list may also include information on voting districts.

Further, "the secretary of state shall provide copies of the public information lists in electronic or other media to any voter registered in Minnesota within ten days of receiving a written or electronic request accompanied by payment of the cost of reproduction."  Id., subd. 5.  "An individual who inspects or acquires a copy of a public information list may not use any information contained in it for purposes unrelated to elections, political activities, or law enforcement."  Id.

3

The statute further provides that election officials are prohibited from providing SVRS data to a member of the public or "in response to a law enforcement inquiry" that includes

> a voter's date of birth or any part of a voter's Social Security number, driver's license number, identification card number, military identification card number, or passport number.

Minn. Stat. § 201.091, subd. 9.

Carlson alleges that he intended to use email addresses contained on the SVRS to contact voters as part of his campaign.  (Am. Compl. ¶¶ 8, 15.)

### 2.      Carlson's Purchase of SVRS Data

Carlson alleges than unnamed "employees" of the Office of the Secretary of State "offered . . . verbally" to sell him the email addresses submitted by voters in the Fourth Congressional District that are contained in the SVRS.  (Am. Compl. ¶¶ 5-6.)  He purchased the public information list for the voters in the Fourth Congressional District for $30; however, the compact disc that Carlson received did not contain voter email addresses.  (Id. ¶¶ 5, 22.)  Carlson alleges that "it can be assumed, or can be shown, that others have received these[] email lists that were offered to me."  (Id. ¶ 22.)

### 3.      Carlson's Future Plans

Carlson avers that he intends to be a 2014 candidate for Congress in the 4th

District or the U.S. Senate race.  (Carlson Decl. ¶ 4.)  He further claims that he is

considering seeking the Minnesota Democratic Farmer Labor ("DFL")

endorsement or asking DFL voters to vote in the Independence Party nomination

process.  (Id.)

### B.      Procedural History

On October 30, 2012, Carlson filed a Complaint in this Court against

Defendants Bert Black, in his official capacity as legal advisor to the Minnesota

Secretary of State, and Mark Ritchie, in his official capacity as the Minnesota

Secretary of State.  He filed an Amended Complaint on November 2, 2012.

Also on November 2, Carlson filed a Motion for Preliminary Injunction,

requesting that the Court order the Secretary of State to release the email

addresses to him before the election.  [Docket No. 6]  The Court denied that

motion that same day because Carlson did not provide proof of service or fulfill

the requirements for an ex parte temporary restraining order.  [Docket No. 8]

On November 5, Carlson filed a verified version of his Amended

Complaint.  [Docket No. 12]  This Amended Complaint alleges: Count One:

wrongful withholding of contacts (based on Defendants' withholding of voters'

email addresses) and Count Two (based on constitutional violations by the Minnesota DFL in its selection Betty McCollum).

On November 5, the Court again denied the Motion for a Preliminary Injunction, this time on the grounds that Carlson was unlikely to succeed on the merits of his claim that the Secretary of State was required to provide the voter email addresses to him.  [Docket No. 15]

On December 11, 2012, Defendants filed the instant motion to dismiss the Amended Complaint.  Carlson filed his Opposition to the motion to dismiss on February 22, at least fifty days late under the Local Rules.  Defendants have filed a motion to strike his Opposition brief as untimely.

On December 21, 2012, Carlson filed a petition pursuant to Minnesota Statute § 204B.44, before the Minnesota Supreme Court seeking declaratory and injunctive relief.  His petition contained a First Amendment claim based on who can participate in and vote at precinct caucuses; an assertion that Ritchie violated the Minnesota Government Data Practices Act and the First Amendment rights to political association and speech by withholding email addresses of registered voters in the Fourth Congressional District; and a claim that the state district court violated his First Amendment right of access to the courts by refusing to

accept his election contest for filing.  See Carlson v. Ritchie, --- N.W.2d ----, 2013 WL 2221495 (Minn. May 22, 2013).

On Wednesday, March 13, 2013, Carlson filed a document in this case opposing the motion to strike his untimely Opposition brief and requesting that this case be continued pending the outcome of the proceeding before the Minnesota Supreme Court.

On May 22, 2013, the Minnesota Supreme Court denied Carlson's petition, dismissing the first two claims based on laches and the third claim for falling outside the scope of Minnesota Statute § 204B.44.  2013 WL 2221495, at *6.

## III.    DISCUSSION

### A.    Motion to Strike

Defendants request that the Court strike Carlson's Opposition brief because it was significantly late and Carlson made no attempt to request leave from the Court to file the late memorandum until two days before oral argument. The Court agrees that it would be within its discretion to strike Carlson's memorandum, but it declines to do so.  Defendants have ably responded to Carlson's Opposition both in their Reply brief and at oral argument.

### B.    Motion to Continue

On March 13, Carlson requested that this case be continued until the

Minnesota Supreme Court reached a decision on Carlson's petition contesting

the 2012 election.  Alternatively, he asked that the hearing on this motion to

dismiss be continued for additional briefing.  Additionally, he requested that the

Court strike Defendants' references to other "extraneous" litigation.

The Court denies Carlson's requests.  First, the Minnesota Supreme Court

has now ruled on his petition, so the request for a continuance is moot.  Second,

this matter has been fully briefed and an in-depth oral argument occurred.

Carlson has demonstrated no need for a continuance for additional briefing.

Third, the Court denies Carlson's request to strike because he points to no

inappropriate portions of Defendants' filings.

## C.    Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include

8

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

### D.   Eleventh Amendment Immunity

Under the Eleventh Amendment of the U.S. Constitution, states are immune from suit in federal court by citizens of any state. Skelton v. Henry, 390 F.3d 614, 617 (8th Cir. 2004). "State immunity under the Eleventh Amendment does not apply to awards for prospective relief, but does bar the award of any retroactive relief for violations of federal law that would require payment of funds from a state treasury." Id. (citations omitted). In other words case law allows "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996) (citation

omitted).  Also, "[a] state may waive its immunity from suit in federal court by voluntarily submitting its rights for judicial determination."  Skelton, 390 at 618 (citation omitted).

Additionally, the Eleventh Amendment bars federal lawsuits against states for allegedly violating their own laws, regardless of whether the plaintiff seeks prospective relief.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

Here, Carlson seeks declaratory relief, compensatory and punitive damages, and injunctive relief.  Carlson's claims are based on the allegation that Defendants have violated Minnesota Statute § 201.091, which Carlson asserts "provides, as pertinent to the instant lawsuit, for e-mails and other personal information to be provided to voters in the 4th Congressional District, as redistricted in 2010, as part of the process of voter information."  (Am. Com. ¶ 5.) To the extent that Carlson's claims are based on Defendants' alleged violation of a state statute, Defendants are immune from suit.  See Pennhurst, 465 U.S. at 106.

Eleventh Amendment immunity also bars Carlson's request for monetary damages and punitive damages.  The State of Minnesota is protected from such suits in federal court, and the State has done nothing to waive its immunity.

Eleventh Amendment immunity does not bar Carlson's request for future injunctive relief in the form of providing him the voter email data for his next campaign or requesting future changes to the DFL caucus system to the extent those claims are based on allegations of continuing violations of federal law.  The Court now turns to those remaining federal claims, which seek future injunctive relief.

### E.  Claims Regarding the DFL Party

Carlson asserts that certain DFL policies violate his constitutional rights. (Am. Compl. ¶¶ 16-19.)  He asserts that the DFL maintains "quotas" based on gender, sexual orientation, and other characteristics in choosing its delegates, party committee members, and officers.  (Id. ¶ 17.)

The Amended Complaint alleges:

> Th[e] Defendant Mark Ritchie is a member of the Minnesota DFL and chairs the Minnesota state canvassing board certifying elections, and is the chief elections official in the State of Minnesota. As such Ritchie knows or should know of the "proportional representation" policies and practices of the DFL party, and is responsible for ensuring that the party [sic]

> The action of the state in applying the voter list statute and in sanctioning the DFL party discriminatory policies and practices, violate[s] the First Amendment, since it places substantial and direct restrictions on the ability of candidates, citizens, and associations to engage in protected political expression, restrictions that the First Amendment cannot tolerate.

(Am. Compl. ¶¶ 19-20.)

Carlson cites to cases holding that the federal government will intervene to protect voter's right to participate in the selection of congressional representatives.  See, e.g., Ex. Parte Yarbrough, 110 U.S. 651 (1884).  He argues that the alleged DFL quota system violates the Fifteenth and Nineteenth Amendments of the U.S. Constitution by denying white males the right to participate and violates the First Amendment right to freedom of association. The Court interprets Carlson's claims of violations of the Constitution to be claims under § 1983, under which a plaintiff must establish (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982).

The DFL is not a Defendant in this action.  The Minnesota Secretary of Sates is not responsible for a political party's internal organization or the manner in which it chooses delegates or other officials.  Nor do Defendants or the State do anything to "sanction[]" the "DFL party . . . policies and practices."  The practices Carlson challenges are internal DFL rules that govern party officers and endorsements, not public elections.  Defendants have no legal authority to force a

Minnesota political party to change its internal policies, and the DFL is not a party to this action.  There is no allegation of any particular law, policy, or action by Defendants regarding the DFL's procedures, apart from alleging that Defendants know about the quota system and have done nothing about it.

Both McCollum and Carlson appeared on the 2012 general election ballot because they won primary elections, not party caucuses.  In Minnesota, a party's endorsement is simply an expression of support by a private political association; it has no impact on the legal processes by which Minnesota chooses its elected officials.  Although Carlson asserts that the DFL is legally required to be a "state-sponsored and regulated forum where partisan candidates for office can be selected to be put on the official ballot" (Am. Compl. ¶ 17), it is the voters in the primary election, not the political parties, who select the candidates to be placed on the general election ballot.  Also, the candidates listed on the primary election ballot have been "selected" pursuant to procedures set forth in Minnesota Statute Chapter 204B, none of which require endorsement or other approval by a political party.

Political parties are private entities that possess the right to the freedom of association.  See Tashjian v. Republican Party of Conn., 479 U.S. 208, 224 (1986)

("[A political] [p]arty's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution.  And as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or irrational.").  "Freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders."  Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 229-30 (1989) (citation omitted).

Although Carlson is correct that, in some instances, constitutional protections will extend to party procedures, the required context does not exist here.  As the Supreme Court explained in United States v. Classic,

> Where the state law has made the primary an integral part of the procedure of choice, or where in fact the primary effectively controls the choice, the right of the elector to have his ballot counted at the primary, is likewise included in the right protected by Article I, s 2.

313 U.S. 299, 318 (1941).  Here, the party candidates for the general election for Congress are determined by the primary, which is run by the State, in which every voter has a right to vote, and in which there is no allegation of a quota system.  Carlson's allegations solely relate to the DFL caucus and convention system, which does not determine which candidates appear on the general

14

election ballot as candidates for Congress.  Thus, his allegations fall under <u>Eu</u>, in which the Supreme Court held that a political party's right to "[f]reedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders," 489 U.S. at 229 (citation omitted), rather than under <u>Classic</u>.

In sum, there is no allegation in the Amended Complaint regarding the DFL's policies that can sustain a claim against Defendants, who have no part in the creation, execution, or enforcement of the DFL's internal caucus policies.

### F.      Claims Regarding the Email List

As the Court has already noted, the Eleventh Amendment bars Carlson's claims for damages based on Defendants' past failure to provide the email address list to him in advance of the 2012 general election.  His remaining claim for prospective injunctive relief, in the form of requiring Defendants to provide the email list in the future, fails to state a claim upon which relief can be granted.

### 1.      Free Speech

Carlson alleges that Defendants' refusal to provide him with voters' email addresses violates his free speech rights under the First Amendment.  He alleges:

> Minnesota has both interfered in federal election processes where it
> is not authorized, regulating a speech activity it may not, and also

> through its regulation has violated the U.S. Constitution and the
> clear intent of the statute itself.  Minnesota may not interfere in the
> election of federal officials by denying the expression of political
> matter to voters by blocking just one kind of communication, e-mail,
> while allowing telephone calls.

 (Am. Compl. ¶ 25.)  He further claims that "Mr. Black and Mr. Ritchie transgress

the First Amendment when they so act by restraining the use of available public

information to contact voters."  (Id. ¶ 26.)

The Amended Complaint does not allege a violation of the First

Amendment right to free speech.  Carlson was and is free to send Fourth

Congressional District voters emails seeking their vote.  Defendants have not

taken any action to regulate the content or manner of his message.  Instead, they

have simply declined to sell him the type of voter-contact information that he

desires.  Defendants' refusal to sell Carlson private email information does not

constitute "plac[ing] substantial and direct restrictions on [his] ability . . . to

engage in protected political expression" (Am. Compl. ¶ 20), "interfer[ing] in

federal election processes" (id. ¶ 25), "regulating a speech activity" (id.),

"restraining the use of available public information" (id. ¶ 26), or "prior

restraint" on Carlson's free expression (id. ¶ 23).

The U.S. Constitution does not require the government give something of value to a private party so that he can more "efficient[ly]" (Am. Compl. ¶ 15) engage in political expression.  Defendants have no legal obligation to facilitate Carlson's campaign.  The Amended Complaint fails to state a claim against Defendants based on violation of the First Amendment right to freedom of speech.

## 2.     Freedom of Association

The Court also finds no factual allegation in the Amended Complaint to support Carlson's claim that Defendants have violated his right to free association.  (Am. Compl. ¶ 23.)

## 3.     Equal Protection

Carlson asserts that Defendants have violated his right to equal protection by providing email address information to other political candidates but not to him.  (Am. Compl. ¶ 22.)

> The Equal Protection Clause generally requires the government to treat similarly situated people alike.  To survive dismissal, [Carlson] must allege that Minnesota treated [him] differently than similarly situated people.

Minnesota Majority v. Mansky, 708 F.3d 1051, 1059-60 (8th Cir. 2013) (citations omitted).

Here, the only factual basis for the equal protection claim is that "it can be assumed, or can be shown, that others have received these[] e-mail lists that were offered to me." (Am. Compl. ¶ 22.) Carlson's assumptions about the data that other campaigns have received from Defendants are both speculative and conclusory, so they fail to "to raise a right to relief above the speculative level" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Palmore v. City of Pacific, 851 F. Supp. 2d 1162, 1170-71 (E.D. Mo. 2010) (granting motion to dismiss equal protection claim when plaintiff "fails to identify any 'others' or when 'others' were given preferential treatment [and] [h]e simply makes the broad, speculative assertion that 'others' were treated more favorably").

### 4. Substantive and Procedural Due Process

Carlson asserts that Defendants have violated his due process rights by providing email address information to other political candidates but not to him and by failing to provide the email addresses to him despite a valid offer to do so. (Am. Compl. ¶¶ 22, 25.)

### a) Standard for Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. This clause has two components: the procedural due process

18

and the substantive due process components.  Analysis of either a
procedural or substantive due process claim must begin with an
examination of the interest allegedly violated, and [t]he possession
of a protected life, liberty, or property interest is . . . a condition
precedent to any due process claim.  [W]here no such interest exists,
there can be no due process violation.

Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999 (citations omitted).

Here, the Amended Complaint fails to allege that Carlson has a protected

interest in the email addresses he seeks.  Carlson points to no constitutional right

to possess the email addresses of the voters in his district, and the Court finds

none.  Moreover, the Court rejects Carlson's assertion that Minnesota law

provides him a right to possess the email addresses.

### b)  Existence of a Protected Property Right Under Minnesota Statute

"The hallmark of property . . . is an individual entitlement grounded in

state law, which cannot be removed except 'for cause.'"  Logan v. Zimmerman

Brush Co., 455 U.S. 422, 430 (1982).

Carlson appears to assert that he has a protected property interest in the

email addresses because Minnesota Statute § 201.091 requires Defendants to

provide the public information list, which includes "e-mails and other personal

information . . . to voters in the 4th Congressional District," such as Carlson. (Am. Compl. ¶ 5.)

Subdivision 4 of § 201.091 provides that portion of SVRS data entitled "public information list" "must contain the name, address, year of birth, and voting history of each registered voter in the county;" "[t]he telephone number must be included on the list if provided by the voter;" and "[t]he public information list may also include information on voting districts."  Carlson points to no other provision of Minnesota or federal law indicating that any other SVRS data is required – or even permitted – to be included in the public information list.

Carlson notes that subdivision 4 "does not exclude e-mail from the public list to be made available to me.  It only says [that] it is not necessary to provide it by the statute."  (Am. Compl. ¶ 12.)  However, the public information list is a statutory creation, and the statute defines which categories of data are included in the list.

Carlson notes that § 201.091, subdivision 9, entitled "Restricted data," does not explicitly state that voter email addresses are restricted from dissemination to the public.  This fact does not change the Court's analysis.  Subdivision 9 declares

that election officials are not allowed to provide certain categories of voter data

to other persons, whether through the public information process or through the

other process governed by § 201.091 – by which non-public information can be

provided in response to a law enforcement inquiry.  Therefore, subdivision 9

narrowly defines the information that is not available for dissemination by the

public information list <u>or</u> in response to a law enforcement inquiry.  The category

of information that is not available to the public in the public information list is

broader than just the information listed in subdivision 9.  <u>See also</u> <u>McGrath v.</u>

<u>Minn. Sec'y of State</u>, No. A11–613, 2011 WL 5829345, at *5 (Minn. Ct. App. Nov.

21, 2011) (unpublished) (holding that, "by statute the only list" of SVRS data

"available for inspection by members of the public is the public information

list"), <u>review denied</u> (Feb. 14, 2012).

The Court further concludes that Carlson's reliance on a recent advisory

opinion by the Information Policy Analysis Division ("IPAD") of the Minnesota

Department of Administration does not enable his due process claims to survive.

(<u>See</u> IPAD Advisory Opinion 12-016.)  First, the IPAD advisory opinion is not

binding on the Secretary of State and is only given deference by a court in a

proceeding involving the data at issue (data in polling rosters), which is not the

case here, where the Court is addressing access to voter email addresses.  See

Minn. Stat. § 13.072, subd. 2.  Second, the IPAD opinion did not address whether

or not data not listed in the statute was part of the public information list.

Rather, the IPAD opinion concluded that certain polling roster data was

available under the "other information" clause in Minnesota Statute § 201.091,

subdivision 4, which provides that the Secretary of State "**may** provide copies of

the public information lists **and other information from the statewide**

**registration system** for uses related to elections [or] political activities."

(emphasis added).  The plain language of subdivision 4 provides that the

Secretary of State may provide copies of other SVRS data, not part of the public

information list, for uses related to political activities, not that he must provide

other data.  "'May' is permissive," not mandatory.  Minn. Stat. § 645.44, subd. 15.

Such permissive language does not create a protected property interest:

> [A] state statute or policy can create a constitutionally protected
> property interest, first, when it contains particularized substantive
> standards that guide a decision maker and, second, when it limits
> the decision maker's discretion by using mandatory language (both
> requirements are necessary).  Statutes or policies that are only
> procedural, or that grant to a decision maker discretionary authority
> in their implementation, in contrast, do not create protected
> property interests.

Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir. 1999) (citations omitted).

The Court concludes that, by statute, voters' email addresses are not part of the public information list, and Carlson does not have a protected interest in obtaining the email addresses.

### c)      Representations by the Office of the Secretary of State

Even if, as Carlson claims, an employee of the Office of the Secretary of State offered to sell the email address list to Carlson as part of the public information list, despite the Minnesota statute, such a representation would not create a protected property right for Carlson.  The Office of the Secretary of State has no authority to change state election law through an erroneous interpretation of state law.  See Paquin v. Mack, 788 N.W.2d 899, 906 (Minn. 2010) (holding that, even if an employee of the Secretary of State's office made a representation to the plaintiff that was contrary to the state statute, the Secretary of State was not estopped because "[t]he Secretary of State's office has no authority to change state law," and "[r]egardless of the advice [the plaintiff] received, he was still obligated" to follow state law).

In sum, because Carlson alleges no protected life, liberty, or property interest, his due process claims fail to state a claim upon which relief can be granted.

### G.     Implicit Contract Claim

Defendants interpret the Amended Complaint to also assert a contract claim based on the alleged promise by employees of the Office of Secretary of State to provide Carlson with SVRS data that included voters' email addresses and Carlson's payment of $30 in consideration for that promise.  (See Am. Compl. ¶¶ 6, 11, 14, 22.)  Such a state law contract claim is barred by the Eleventh Amendment.  Pennhurst State Sch. & Hosp., 465 U.S. at 106.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Docket No. 18] is **GRANTED**.

2. Defendants' Motion to Strike Plaintiff's Responsive Memorandum as Untimely [Docket No. 30] is **DENIED**.

3. Plaintiff's Motion for Continuance [Docket No. 34] is **DENIED**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 31, 2013                    s/ Michael J. Davis
                                        Michael J. Davis
                                        Chief Judge
                                        United States District Court

24